IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CITENS FOR COMMUNITY VALUES, INC., : <br><br> Plaintiff, <br><br> vs. <br><br> UPPER ARLINGTON PUBLIC LIBRARY BOARD OF TRUSTEES, <br><br> Defendant. | Case No.: <br><br> **2:08 cv 223** <br> **JUDGE SMITH** <br> **MAGISTRATE JUDGE KING** |

FILED
JAMES BONINI
CLERK

2008 MAR -7 A 10: 24

U.S. DISTRICT COURT
[illegible]
[illegible] COLUMBUS

### VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTIONS, AND NOMINAL DAMAGES

COMES NOW, Citizens for Community Values, by and through its attorneys, and respectfully requests this Court to issue a declaratory judgment, preliminary and permanent injunctions, nominal damages, and costs and fees for violating its federal and state constitutional rights. The Defendant, Upper Arlington Public Library Board of Trustees (hereinafter the "Library"), is prohibiting Plaintiff from engaging in expressive activities in a generally available public forum because the Library has deemed those activities to be "inherent elements of a religious service." In support thereof, Plaintiff alleges the following:

### JURISDICTION AND VENUE

1. This civil rights action under 42 U.S.C. § 1983 raises federal claims under the First and Fourteenth Amendments to the United States Constitution and a state claim under Section 7, Article I of the Ohio Constitution.

2. This Court has original jurisdiction over the federal law claims by operation of 28 U.S.C. §§ 1331 and 1343 and has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

3. This Court has authority to issue the requested injunctive relief under 28 U.S.C. § 1343, the requested declaratory relief under 28 U.S.C. §§ 2201-02, the requested damages under 28 U.S.C. § 1343, and costs and attorneys' fees under 42 U.S.C. § 1988.

4. Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Southern District of Ohio because a substantial part of the events giving rise to the claim occurred within the District.

## IDENTIFICATION OF THE PLAINTIFF

5. Plaintiff CITIZENS FOR COMMUNITY VALUES is a nonprofit charitable, educational and religious corporation organized under the laws of the State of Ohio.

## IDENTIFICATION OF THE DEFENDANT

6. Defendant UPPER ARLINGTON PUBLIC LIBRARY BOARD OF TRUSTEES is a body politic and corporate of the State of Ohio, and a political subdivision thereof. The Board is responsible for providing general oversight and establishing operational policies for the Upper Arlington Public Library, a municipal free public library.

## FACTUAL ALLEGATIONS

### Background

7. Plaintiff is a nonprofit charitable, educational, and religious organization that strives to promote Judeo-Christian moral values for civil government at the local, state, and

2

national level. To this end, Plaintiff offers seminars and other educational events that are designed to promote these values.

8. Plaintiff sincerely believes: that the Bible is the inspired Word of God and as such is the source of, among other things, all ethical standards governing the affairs of men; that the God of the Bible is sovereign over all areas of life, including the socio-political order; and, finally, that the Bible teaches that Christian pastors have a duty to preach and teach the foregoing truths and that Christians in general have a duty to participate in the political process.

9. Consistent with and in an effort to practice its sincere religious beliefs, Plaintiff planned a series of events called "Politics in the Pulpit." The events were scheduled to occur just prior to the primary election in Ohio. Two of the events have already taken place—one in Dayton, Ohio on February 26, 2008, and the other in Cincinnati, Ohio on February 28, 2008. The Politics and the Pulpit event in Upper Arlington was scheduled to take place on February 27, 2008.

10. Plaintiff's "Politics and the Pulpit" presentation includes four elements: (1) a discussion of what the Bible teaches regarding political involvement by Christians, pastors, and churches; (2) a discussion of the current status of the law regarding political involvement by Christians, pastors, and churches; (3) a time of prayer to petition God for guidance on the church's proper role in the political process; and (4) a time of singing praise and giving thanks to God for the freedom we have in this country to participate in the political process.

11. Other public library systems in Ohio have permitted Plaintiff to conduct its Politics and the Pulpit event in their meeting rooms.

### The Library's Meeting Room Policy

12. Pursuant to the Library's Meeting Room Policy, meeting rooms are available on a first-come, first-served basis for outside organizations to use for a broad array of topics. The first paragraph of the Meeting Room Policy states:

> As an institute of education for democratic living, the library welcomes the use of its meeting rooms for cultural activities and discussion of public questions and social issues. Our meeting rooms are available on equal terms to all groups in the community regardless of the beliefs and affiliations of their members.

A true and correct copy of the Library's Meeting Room Policy is attached hereto as Exhibit 1 and made a part hereof.

13. Notwithstanding the first paragraph, the Library's Policy prohibits the use of meeting rooms for "commercial, religious or political campaign meetings." "Committees affiliated with a church" are allowed "provided no religious services are involved."

14. The Meeting Room Policy does not define or further explain what constitutes a "religious meeting" or a "religious service," or what it means to be "affiliated with a church."

15. Groups seeking to use a meeting room are required to obtain prior approval from a Library employee, who reviews the content of the event prior to granting approval.

16. According to the Meeting Room Policy, if a Library employee is unsure whether a particular event is eligible to use a meeting room, the request is referred to the Library Director for a final determination.

17. In 2007, the Library's Board of Trustees formed an Ad Hoc Meeting Room Use Committee ("Committee") to explore whether the Meeting Room Policy needed to be changed. Three members of the Board of Trustees, Jack Burtch, Bryce Kurfees, and John Magill were on this Committee. Library Director Ann Moore was also on this committee.

4

18. The Committee met on June 5, 2007 and June 14, 2007. The Committee's meeting notes were incorporated in the Board of Trustee's June 19, 2007 meeting minutes. A true and correct copy of the applicable portion of the June 19, 2007 meeting minutes are attached hereto as Exhibit 2 and made a part hereof.

19. During the Committee's June 5 meeting, Board Member Bryce Kurfees objected to the "incongruity" between the first paragraph of the Policy (which states that the meeting rooms are "available on equal terms to all groups in the community") and the third paragraph (which prohibits use of the meeting rooms for "commercial, religious or political campaign meetings").

20. During the same meeting, Board of Trustee President Jack Burtch noted that "prohibitions [on meeting room use] based on content have not been supported by case law and Supreme Court decisions." Burtch also told the Board of Trustees that it cannot exclude an organization from using the meeting rooms "based on content" during the Board's February 20, 2007 meeting. A true and correct copy of the applicable portion of the Board's February 20, 2007 meeting minutes are attached hereto as Exhibit 3 and made a part hereof.

21. Nonetheless, at the next meeting on June 14, Burtch expressed a desire to maintain restrictions in the Meeting Room Policy to avoid "the appearance of having a 'state sponsored' religion." Burtch also noted, in response to a suggestion that the policy be rewritten to prohibit "religious worship services," that "defining what constitutes a 'worship service' is an extremely difficult task."

22. Despite the concerns that had been raised about the constitutionality of the Policy, the Committee decided not to make any changes to the Meeting Room Policy.

23. The Meeting Room Policy remains in effect, unchanged, to this day.

5

## The Library's Rejection of Plaintiff's Request to Use a Meeting Room

24. On February 14, 2008, a representative from Plaintiff faxed a letter and application to the Library's Community Relations Manager, Ruth McNeil, describing the Politics and the Pulpit event and requesting permission to use a meeting room on February 27, 2008 for the event. A true and correct copy of the letter and application is attached hereto as Exhibit 4 and made a part hereof.

25. The next day, a representative from the Library's Community Relations department notified Plaintiff, by telephone and fax, that the Library intended to accommodate Plaintiff's request and had scheduled Plaintiff to use the "Friends Theater" meeting room on Wednesday, February 27, 2008, from 7:00 to 8:30 p.m. A true and accurate copy of the fax is attached hereto as Exhibit 5 and made a part hereof.

26. A few days later, Ms. McNeil contacted Barry Sheets of CCV and informed him that the Library had reconsidered Plaintiff's request to use a meeting room. In a follow-up letter dated February 21, 2008, Ann Moore, the Library Director explained that the Library was rejecting Plaintiff's request pursuant to the Meeting Room Policy's prohibition on "religious meetings." A true and correct copy of this letter is attached hereto as Exhibit 6 and made a part hereof.

27. The Director explained in the letter that the first two elements of Plaintiff's event—a discussion of Biblical teaching regarding political involvement, and a discussion of the current status of the law regarding political involvement by Christians, pastors, and churches—were permissible under the Meeting Room Policy. But the other two elements of the meeting—a time of singing and a time of prayer—were "inherent elements of a religious service" and thus in conflict with the Library's Policy.

6