IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CITIZENS FOR COMMUNITY VALUES, INC., | : | |
| | : | Case No. 2:08-cv-00223 |
| Plaintiff, | : | |
| | : | Judge George C. Smith |
| v. | : | |
| | : | Magistrate Judge King |
| UPPER ARLINGTON PUBLIC LIBRARY BOARD OF TRUSTEES, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE EXPENSES**

**I. INTRODUCTION**

Plaintiff Citizens for Community Values, Inc. ("Plaintiff") continues to insist that Defendant Upper Arlington Public Library Board of Trustees ("Defendant" or "the Library") denied it access to one of its public meeting rooms. This is untrue.

On February 14, 2008, the Library gave Plaintiff permission to use one of its public meeting rooms on February 27, 2008 to hold a "Politics and the Pulpit" event. (*See* Mell Afd. ¶¶3-4, Tabs A, B, Ex. 3, Doc. #15). The Library simply requested that Plaintiff abide by its Meeting Room Policy, which prohibits the public from conducting "religious services" in the Library's meeting rooms, when it held this event. (*See* McNeil Afd. ¶¶5-6, Tab A, Ex. 4, Doc. #15). Plaintiff then decided not to use the Library's meeting room space that it had reserved but never communicated this decision to the Library. (Id. at ¶7). Instead, on March 7, 2008, Plaintiff filed suit against the Library asserting that several of its federal and state constitutional rights had been violated by the Library's request that it comply with the Meeting Room Policy,

which the Library deemed to prohibit Plaintiff from engaging in "[a] time of prayer petitioning God for guidance on the Church's proper role in the political process" and "[a] time of signing praise and giving thanks to God for the freedom we have in this country to participate in the political process" because the Library concluded that "[b]oth activities are inherent elements of a religious service." (*See* Verified Complaint, Doc. #2).

This Court agreed that Plaintiff's First Amendment Free Speech rights were violated; however, the Court made no finding with regard to Plaintiff's numerous other federal and state constitutional causes of action. On August 14, 2008, the Court issued an Opinion and Order holding that the Library's "practice of prohibiting activities [in its meeting rooms that] it concludes are 'inherent elements of a religious service' or elements that are 'quintessentially religious' is unconstitutional." (Opinion and Order, pp. 25, 31, Doc. #19). Significantly, in reaching this "narrow holding" the Court expressed "no opinion on the constitutionality of Defendant Library's policy of precluding religious services." (Id.). The Court's decision was memorialized in a Final Judgment and Permanent Injunction Order entered October 16, 2008. (Doc. #35).

Plaintiff now moves this Court to award it $45,931.50 in attorneys' fees and $198.29 in non-taxable expenses pursuant to 42 U.S.C. §1988 because it was the "prevailing party" in this matter.[1] Defendant denies that Plaintiff is entitled to this award as explained more fully below.

## II. LAW AND ARGUMENT

### A. Plaintiff Is Not Entitled To An Award Of Attorneys' Fees And Costs Because Special Circumstances Render Such An Award Unjust.

42 U.S.C. §1988 authorizes district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation and a prevailing party "should ordinarily recover an

---

[1] Plaintiff will also seek to recover the additional attorneys' fees and any non-taxable costs that it incurs in filing its Reply Brief in support of its Motion. (Plaintiff's Memorandum, p. 10).

attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal citations omitted). Among the special circumstances that may be considered are "the presence or absence of any bad faith or obdurate conduct on the part of either party, and any unjust hardship that a grant or denial of fee-shifting might impose." Zarcone v. Perry, 581 F.2d 1039, 1044 (2nd Cir. 1978). Here, the Library acknowledges that Plaintiff is a prevailing party to the extent that the Court granted Plaintiff's Motion for Preliminary Injunction and, in its "narrow holding," permanently enjoined "Defendant from severing out and excluding activities from its meeting rooms that it concludes are 'inherent elements of a religious service,' or elements that are 'quintessentially religious.'" (Opinion and Order, p. 31, Doc. #19). However, the Library contends that special circumstances exist warranting the denial of Plaintiff's request for attorneys' fees and costs.

42 U.S.C. §1988 was enacted to ensure "effective access to the judicial process for persons with civil rights grievances." Hensley, *supra*, 461 U.S. at 429 (citations omitted). However, "[i]t must never be forgotten that Congress enacted the fee shifting provision not to punish defendants but to encourage lawyers to undertake litigation to vindicate the constitutional and statutory rights of those who could not otherwise afford to vindicate those rights." Turner v. D.C. Bd. of Elections and Ethics, 170 F.Supp.2d 1, 6 (D.D.C. 2001), *judgment vacated,* 354 F.3d 890 (D.C. Cir. 2004), *cert. denied,* 543 U.S. 817, 125 S.Ct. 55, 160 L.Ed.2d 24 (2004). These policy concerns would be compromised, not advanced, by awarding attorneys' fees and costs to Plaintiff here.

The Library, a non-profit public entity, reasonably believes that Plaintiff orchestrated this lawsuit in bad faith with the goal of recovering attorneys' fees to advance its counsel's political

agenda,[2] not to vindicate Plaintiff's constitutional rights.[3] The Library's belief is based upon Plaintiff's own evidence showing that it consulted with David Langdon, Plaintiff's general counsel, about filing a lawsuit against the Library on February 18, 2008—three days <u>after</u> the Library confirmed in writing that Plaintiff could use one of its meeting rooms for its "Politics and the Pulpit" event and two days <u>before</u> the Library ever told Plaintiff's representatives that certain aspects of its proposed event conflicted with the Library's Meeting Room Policy. (*See* Declaration of David R. Langdon, Doc. #30; Newcomb Afd. ¶3, Tab A, Plaintiff's Answer to Defendant's Interrogatory No. 2; Answer to Defendant's Request for Admission #2, Doc. #15).

The fact that Plaintiff would consult with its general counsel about suing the Library <u>before</u> it had any cause of action against the Library, or any reason to believe a cause of action was imminent, is suspect. This is especially true given the fact that Plaintiff's representative Bruce Purdy, who applied to use the Library's meeting room space on February 13, 2008, affirmatively represented to the Library that he had read its Meeting Room Policy, which prohibited religious services from being held in its meeting room space; that Plaintiff would abide by this Policy; and that Plaintiff's proposed event did not involve any "religious services." (Mell Afd. ¶3, Ex. 3, Doc. #15; Verified Complaint, Ex. 4, Doc. #2).

In light of these representations, the Library legitimately questions Plaintiff's motive in consulting with its general counsel about "a potential suit" against the Library on February 18,

---

[2] Since the Court issued its decision granting Plaintiff's Motion for Permanent Injunction on August 14, 2008, the Alliance Defense Fund, co-counsel to Plaintiff, has come under fire for "unethically encouraging pastors nationwide to talk about political candidates form the pulpit," which some view as a threat to the integrity of the tax system. (Newcomb Afd. ¶3, Tab A, Ex. 1).

[3] On August 25, 2008, Plaintiff's counsel contacted the Library's counsel about reserving a meeting room at the Library for another "Politics and the Pulpit" event to be held on September 25, 2008. (Newcomb Afd. ¶4, Tab B). The Library did not have a large enough meeting room available to accommodate Plaintiff on that date, so Plaintiff's counsel advised that Plaintiff would try for another date. (Newcomb Afd. ¶5, Tab C; Moore Afd. ¶3, Ex. 2). However, Plaintiff never made any further contact with the Library about scheduling a "Politics and the Pulpit" event there, leaving the Library to legitimately question whether Plaintiff ever truly desired to have equal access to its meeting room space, or whether its primary goal in filing this lawsuit was to secure a victory so that it could collect attorneys' fees to fund the Alliance Defense Fund's political agenda on other fronts. (Moore Afd. ¶4).

2008, when there was no factual or legal basis to conclude that any of its constitutional rights were being violated at that time, or were in imminent danger of being violated. Rather, the Library posits that this lawsuit was a "set up." On such facts, it would be patently unjust to reward Plaintiff for its dubious conduct by granting its Motion for attorneys' fees and costs and doing so would undermine the very purpose of 42 U.S.C. §1988, which was enacted to ensure effective access to the judicial process for those who could not otherwise afford to vindicate their civil rights, not as a vehicle to line counsel's coffers. *See e.g.*, Reed v. Rhodes, 179 F.3d 453, 472 (6th Cir. 1999) (noting that the Sixth Circuit has cautioned district courts that "they do not have a mandate . . . to make prevailing counsel rich."). For this reason, Defendant respectfully requests that the Court exercise its discretion to deny Plaintiff's Motion for Attorneys' Fees and Non-Taxable Costs in its entirety.

B. **The Court Should Reduce Any Award Of Attorneys' Fees To Plaintiff Because It Did Not Obtain All The Relief It Sought.**

To be a "prevailing party," a party must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley, *supra*, 461 U.S. at 429. While the Library acknowledges Plaintiff's prevailing party status, Plaintiff still did not prevail on all five of its claims for relief.[4] Beyond that, Plaintiff specifically requested in its Prayer for Relief that the Court "[d]eclare that the Library's Meeting Room Policy is facially unconstitutional and violates Plaintiff's rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution, and Article I, Section 7 of the Ohio Constitution." (*See* Verified Complaint, Prayer for Relief (B), Doc. #2). However, the Court

---

[4] The Court found in Plaintiff's favor on its First Amendment Free Speech cause of action, which was Count I of its Verified Complaint. The Court issued <u>no</u> decision with regard to Plaintiff's four other claims: violation of Plaintiff's Free Exercise Rights under the First Amendment to the U.S. Constitution (Count II); violation of Plaintiff's Equal Protection Rights under the Fourteenth Amendment to the U.S. Constitution (Count III); violation of Plaintiff's Due Process Rights under the Fourteenth Amendment to the U.S. Constitution (Count IV); and violation of Plaintiff's Free Exercise Rights under Article I, Section 7 of the Ohio Constitution. (*See* Verified Complaint, Doc. #2).

refused to do so, and "express[ed] no opinion on the constitutionality of Defendant Library's policy of precluding religious services." (Opinion and Order, p. 31, Doc. #19).

The United States Supreme Court and the Sixth Circuit have both held that the degree of a party's overall success is a factor to consider when determining the reasonableness of an attorneys' fees award. *See e.g.,* Texas State Teachers Ass'n v. Garland Independent School Dist., 489 U.S. 782, 792-793, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (explaining that a party who partially prevails is entitled to an award of attorney's fees commensurate to the party's success); Hensley, *supra*, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonably hourly rate may be an excessive amount. This will be true even where the plaintiff's claim were interrelated, non-frivolous, and raised in good faith."); Granzeier v. Middleton, 173 F.3d 568, 577-578 (6th Cir. 1999) (trial court did not abuse its discretion in reducing attorney fee award to prevailing plaintiffs where they achieved only limited success by securing an injunction against religious signs but not against closing the Courthouse on Good Friday, and where plaintiffs' counsel had not sufficiently demonstrated or documented the reasonableness of hours spent or the hourly rate claimed). As applied here, the Court should reduce any award of attorneys' fees it makes to Plaintiff by as much as 80 percent,[5] which is commensurate with Plaintiff's overall success on only one of its five causes of action.

C. **The Court Should Reduce Any Award Of Attorneys' Fees To Plaintiff Because The Fees It Seeks Are Not Reasonable.**

The amount of any fee awarded necessarily depends upon the facts of each case. Hensley, *supra*, 461 U.S. at 429. Under Hensley, the calculation of a fee award involves two steps. A court first determines "the number of hours reasonably expended on the litigation

---

[5] An 80 percent overall reduction takes Plaintiff's attorneys' fees request from $45,931.50 to $9,186.30.

{H1339715.1}  6

multiplied by a reasonably hourly rate," as an objective starting point, also known as the "lodestar" amount. Id. at 433. The court may then adjust the objective figure upward or downward for such factors as common facts or related legal theories. Id. Moreover, any hours that were not reasonably expended are excluded from the calculation. Id. at 434. Limited success may also justify the reduction of the objective amount. Id. at 435-436.

In the instant case, the Parties have stipulated to the reasonableness of the hourly rates charged by Plaintiff's legal team.[6] (Doc. #31). However, Defendant disputes the reasonableness of the hours expended by Plaintiff's counsel. In total, Plaintiff seeks to recover attorneys' fees for 210.1 hours of work completed by its legal team as follows: 5.8 hours for work done by senior counsel Kevin Theriot, Esq.; 52.9 hours for work done by co-counsel and local counsel David Langdon, Esq.; 126.1 hours for work done by junior counsel Timothy Chandler, Esq.; and 25.30 hours for work done by paralegal Michele Schmidt. The Library contends that many of these hours were not reasonably expended and, as a result, should be excluded from the calculation.

1. *The Court Should Reduce Plaintiff's Request To Recover Fees Incurred In Drafting The Verified Complaint, Motion for Preliminary Injunction, And Memorandum In Support Of Plaintiff's Motion For Preliminary Injunction Because Counsel's Hours Are Duplicative And Excessive.*

This Court and other Ohio district courts have found that where the prevailing party's counsel has filed similar complaints in other matters, or drafted briefs duplicating the same research, case law and legal arguments filed in other cases, this is a legitimate basis to reduce the party's claimed attorneys' fees as excessive. *See e.g.,* Estep v. Blackwell, No. 1:06-CV-106, 2006 WL 3469569 at *3 (S.D. Ohio Nov. 29, 2006) (Watson, J.) (Ex. 3) (court reduced amount of attorneys' fees that could be recovered for drafting complaint and motion for temporary restraining order where a comparison of these pleadings with ones filed by same counsel in

---

[6] The stipulated rates are: $325 per hour for Kevin H. Theriot, Esq.; $285 per hour for David R. Langdon, Esq.; $200 per hour for Timothy D. Chandler, Esq.; and $75 per hour for Michele L. Schmidt, CP.

another case showed their similarity; therefore, hours claimed were excessive); Disabled Patriots of America v. Genesis Dreamplex, No. 3:05-CV-7153, 2006 WL 2404140 at *4-5 (N.D. Ohio Aug. 18, 2006) (Ex. 4) (reducing prevailing party's request for attorneys' fees spent preparing complaints and summons, and related tasks, and time spent drafting application for attorneys' fees by 30% because work was duplicative of work done by counsel in other cases and, therefore, excessive); Disabled Patriots of America v. Cedar Fair, No. 3:06-CV-2262, 2008 WL 408695 at *3 (N.D. Ohio Jan. 18, 2008) (Ex. 5) (finding billing to draft complaint excessive where it was substantially identical to complaints in other cases and could have been done by a paralegal).

Here, the Verified Complaint, Motion for Preliminary Injunction and Memorandum in support of the Motion for Preliminary Injunction filed by Plaintiff's counsel are substantially similar to the Verified Complaint and Motion for Preliminary Injunction filed in Faith Center Church Ministries v. Glover, No. 3:04-cv-03111-JSW (N.D. Ca. 2004), a factually and legally similar case wherein the plaintiff was represented by Timothy Chandler, Esq. and the Alliance Defense Fund. (Newcomb Afd. ¶6, Tab D). For example, both cases involve identical allegations by the plaintiffs that their free speech and free exercise rights under the First Amendment and their equal protection rights under the Fourteenth Amendment to the United States Constitution were violated by the public libraries' refusal to allow them unfettered access to their meeting rooms. (*Compare* Verified Complaint in Faith Center, attached hereto as Ex. 6, *with* Plaintiff's Verified Complaint, Doc. #2). Similarly, Plaintiff's counsel here borrowed liberally from the Motion for Preliminary Injunction filed in Faith Center when drafting the Memorandum in Support of Plaintiff's Motion for Preliminary Injunction filed in this case. (*Compare* Motion for Preliminary Injunction in Faith Center, attached hereto as Exhibit 7, *with*

Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, Doc. #5). Not only are the legal arguments virtually identical, but the plaintiff relies on the same case law and direct quotations from this case law in each pleading. Plaintiff's counsel's propensity for recycling legal work is further illustrated by a comparison of the Verified Complaint filed by Plaintiff here with the one it recently filed in <u>Citizens for Community Values, Inc. v. Union Township, Ohio</u>, No. 1:08-cv-00428-HJW (S.D.Ohio 2008) (Doc. #1), and with a comparison of Plaintiff's Memorandum in Support of Motion for Preliminary Injunction filed here (Doc. #5) with the one filed by Plaintiff's counsel in <u>Vandergriff et al. v. Clermont County Public Library Bd. of Trustees</u>, No. 1:08-cv-381-MRB (S.D. Ohio 2008) (Doc. #3).

The declarations submitted by Plaintiff's legal team reveal that Timothy Chandler, who was counsel to Plaintiff in <u>Faith Church</u>, spent approximately 42.6 hours for work associated with drafting the Verified Complaint, Motion for Preliminary Injunction and Memorandum in Support of Plaintiff's Motion for Preliminary Injunction. (*See* Doc. #32). Plaintiff's senior counsel, Kevin Theriot, spent 2.1 hours reviewing these pleadings. (*See* Doc. #29). Plaintiff's co-counsel, David Langdon, also spent approximately 19.1 hours reviewing and revising these same pleadings. (*See* Doc. #30). Paralegal Michele Schmidt also spent approximately 6.2 hours reviewing and editing these pleadings along with performing clerical tasks associated with electronic filing. (*See* Doc. #28). Defendant does not take issue with the hours spent by Mr. Theriot or by Ms. Schmidt. *See* <u>Deal v. Hamilton Co. Dep't of Educ.</u>, No. 1:01-cv-295, 2006 WL 2854463 at *7 (E.D. Tenn. Aug. 1, 2006) (Ex. 8) ("[B]ecause more experienced attorneys charge higher rates for their services, they are expected to perform legal work in an expedited manner."); <u>Gross ex rel. Gross v. Perrysburg Exempted Village Sch. Dist.</u>, 306 F.Supp.2d 726, 737 (N.D. Ohio 2004) (a request for reasonable paralegal fees may also be compensable).

However, Defendant does take issue with the 61.7 hours of combined time spent by Messrs. Chandler and Langdon on these pleadings.

Mr. Chandler's 42.6 hours are excessive given that the Verified Complaint and Memorandum in Support of Plaintiff's Motion for Preliminary Injunction borrow substantially from those filed by him and the Alliance Defense Fund in Faith Center. While Plaintiff relies on Stahl v. Taft, No. 2:03-cv-597, 2006 WL 314496 (S.D.Ohio Feb. 8, 2006) (Ex. 9), for the proposition that attorneys' fees should not be reduced where counsel's work is duplicative or similar to counsel's work in other cases, Plaintiff ignores that this Court reached that conclusion largely because the party opposing the fee request did not offer any case law to support its contention that a reduction was required. Id. at *3. Here, in contrast, Defendant has directed the Court to ample case law supporting its position that a reduction in Plaintiff's fees is warranted. *See* Estep, *supra*, 2006 WL 3469569 at *3; Genesis Dreamplex, *supra*, 2006 WL 2404140 at *4-5; Cedar Fair, *supra*, 2008 WL 408695 at *3.

Moreover, the Court should not be persuaded by Plaintiff's contention that Mr. Chandler's hours were reasonable because he spent "less than six hours writing the initial draft of the Verified Complaint." (Plaintiff's Memorandum, p. 9 n.4). Mr. Chandler's time records reveal that he seeks to recover 17.1 hours for work done on the Verified Complaint, not a mere six hours. (*See* Doc. #32). While Plaintiff asserts that Mr. Chandler spent this additional time on research "focused on the specific facts of this case and legal authority relevant to this particular jurisdiction" (Plaintiff's Memorandum, p. 9 n. 4), his time is still excessive given that Plaintiff asserted only <u>one</u> cause of action under Ohio law, which was set forth in a mere six paragraphs of the Verified Complaint, hardly justifying another 11.1 hours of work. (*See* Verified Complaint, Doc. #2). *See* Cedar Fair, *supra*, 2008 WL 408695 at *3 (court reduced excessive

billing for drafting a complaint that contained only one paragraph specific to the defendant but was otherwise identical to other complaints in other cases). Accordingly, the Court should exclude some of these hours from Plaintiff's fee application.[7]

Furthermore, in light of Mr. Chandler's extensive experience with the legal issues in this case, and his assertion that he spent time mastering the specific facts, it was patently unreasonable for co-counsel David Langdon to spend 19.1 hours reviewing and revising Mr. Chandler's work, especially where Mr. Langdon has not offered any explanation to justify this duplicative billing. As this Court has recognized, "attorney's fees are not awarded for overkill, duplications, or hours spent in the pursuit of perfection when reasonable efforts would suffice." Lee v. Javitch, Block & Rathbone, LLP, No. 1:06-cv-585, 2008 WL 2917087 at *6 (S.D. Ohio July 30, 2008) (Beckwith, J.) (Ex. 10) (citing Deal, supra, 2006 WL 2854463 at *7-8). The Sixth Circuit has also held that one factor to consider when determining the reasonableness of hours billed is "whether the lawyer . . . unnecessarily duplicate[ed] the work of co-counsel." Coulter v. State of Tennessee, 805 F.2d 146, 151 (6th Cir. 1986). In such instance, the district court has the discretion to make a simple across-the-board reduction, by a certain percentage, in order to account for duplicative hours. See Hudson v. Reno, 130 F.3d 1193, 1209 (6th Cir. 1997) (applying across-the-board reduction of 25%), overruled on other grounds, Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001).

Applying those considerations here, Mr. Langdon's duplication of Mr. Chandler's work warrants a reduction in Plaintiff's fee application. According, Defendant respectfully requests that the Court take an across-the-board reduction of 30% on the hours spent by Messrs. Chandler and Langdon on the Verified Complaint, Motion for Preliminary Injunction and Memorandum in

---

[7] Notably, Defendant does not contest the 58.3 hours Mr. Chandler spent drafting Plaintiff's Reply Brief in support of its Motion for Preliminary Injunction, or the 14.3 hours he spent on Plaintiff's Memorandum in Support of its Motion for Attorney's Fees and Non-Taxable Expenses as these were unique work product. (See Doc. #32).

Support of the Motion for Preliminary Injunction, thereby reducing Mr. Chandler's compensable hours for this work from 42.6 to 29.8 hours and Mr. Langdon's compensable hours from 19.1 to 13.3.[8] *See* Genesis Dreamplex, *supra*, 2006 WL 2404140 at *2 ("When counsel seeks compensation for an excessive number of hours, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming the fat from a fee application.").

### 2. *The Court Should Reduce Plaintiff's Request To Recover Fees For Excessive Conferences Between Counsel.*

The declarations filed by Plaintiff's counsel also reflect that David Langdon seeks to recover approximately 20.5 hours in fees for conferences he had with other members of Plaintiff's legal team. This Court has recognized that "conferences are necessary when multiple attorneys are reasonably involved." Lee, *supra*, 2008 WL 2917087 at *6. However, "billing a substantial amount of conference time can manifest the attorneys' desire to inflate the fee request to 'unreasonable levels.'" Id. (quoting Lemieux v. Guy, No. 1:06-CV-0941-DFH-WTL, 2006 WL 3626555 at *4 (S.D. Ind. Nov. 20, 2006)).

Here, Defendant acknowledges that some conferences between counsel are necessary, but contends that Mr. Langdon's request to be reimbursed for 20.5 hours of conference time is excessive in a case, like this one, that was adjudicated in eight short months, where minimal discovery was taken, there were no material disputes between the parties' counsel and only limited conferences with the Court, and the case was essentially dormant for the three month period between the date when Plaintiff filed its Reply Brief in support of its Motion for Preliminary Injunction (May 23, 2008) and the date when the Court issued its decision granting Plaintiff's Motion (August 14, 2008). Accordingly, Defendant respectfully requests that the

---

[8] This 30 percent deduction would reduce Timothy Chandler's total compensable hours from 126.1 to 113.3 and would reduce David Langdon's total compensable hours from 52.9 to 47.1.

Court take an across-the-board reduction of 30 percent reducing Mr. Langdon's compensable hours for conferences with other members of Plaintiff's legal team from 20.5 hours to 14.3 hours.[9]

### 3. The Court Should Reduce Plaintiff's Request To Recover Fees By Excluding Time Entries That Are Not Appropriately Billed To Defendant.

Next, a thorough review of David Langdon's declaration reveals that many of the time entries for which Plaintiff seeks to recover its attorney fees are not properly taxed to Defendant. The following entries submitted by Mr. Langdon should all be excluded and/or reduced:

| Date | Time | Work Performed |
|---|---|---|
| 18-Feb | .10 | Meeting with David Miller regarding potential case against Library |

As explained above, Plaintiff had the Library's permission to use its meeting room for Plaintiff's "Politics and the Pulpit" event when David Langdon consulted with David Miller on February 18, 2008, about suing the Library. It was not until February 20, 2008, two days later, that the Library first notified Plaintiff's representative of its concern that certain portions of the proposed "Politics and the Pulpit" event conflicted with the Library's Meeting Room Policy. (Mell Afd ¶6, Ex. 3; McNeil Afd. ¶5, Ex. 4, Doc. #15). Accordingly, there was no factual or legal basis for Mr. Langdon to meet with Mr. Miller on February 18, 2008 to discuss a "potential case against the Library" and Plaintiff cannot shift this cost to Defendant. See Cedar Fair, *supra*, 2008 WL 408695 at * 3 (disallowing recovery for phone calls to client taking place before cause of action arose).

---

[9] This further reduction would take David Langdon's total compensable time from 47.1 hours to 40.9 hours.

| Date | Time | Work Performed |
|---|---|---|
| 22-Feb | .20 | Correspond with Tim Chandler regarding UA and UT lawsuits (timing, etc.) |

Defendant presumes that the reference to "UT" in this time description means Union Township, which Plaintiff sued on June 24, 2008 in a factually similar lawsuit. *See* <u>Citizens for Community Values, Inc. v. Union Township, Ohio</u>, No. 1:08-cv-00428-HJW (S.D.Ohio 2008) (Doc. #1). Defendant should not be required to compensate Plaintiff for strategic discussions between its counsel about other lawsuits and .10 of this time entry should be excluded.

| Date | Time | Work Performed |
|---|---|---|
| 28-Feb | 1.5 | Dinner meeting with David and Doug |

Plaintiff's counsel's time description is vague leaving Defendant with no idea as to the identity of "David" or "Doug," or the purpose of Plaintiff's counsel's dinner meeting with them. "Attorneys who seek fees have an obligation 'to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended' on the case." <u>Imwalle v. Reliance Medical Products, Inc.</u>, 515 F.3d 531, 552 (6th Cir. 2008) (*quoting* <u>Wooldridge v. Marlene Indus. Corp.</u>, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by* <u>Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Resources</u>, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)). Where documentation is inadequate, the district court may reduce the award accordingly. <u>Hensley</u>, *supra*, 461 U.S. at 433. Here, the Court should exclude this entry from Plaintiff's fee request because it is vague and fails to fully identify the participants or even the subject matter of the dinner meeting.

| Date | Time | Work Performed |
|---|---|---|
| 3-Mar | .10 | Review correspondence from ADF media and review draft of press release |

| Date | Time | Work Performed |
|---|---|---|
| 10-Mar | .10 | Review media reports re complaint filing |

| Date | Time | Work Performed |
|---|---|---|
| 25-Mar | .30 | Telephone conference with David and Barry regarding Ch. 10 interview; follow up telephone conference with Barry regarding same; correspond with Tim and media dept regarding same |

| Date | Time | Work Performed |
|---|---|---|
| 14-Aug | .40 | [correspond] with media re same |

Defendant should not be required to compensate Plaintiff for time its counsel voluntarily spent communicating with the media about Plaintiff's case as these discussions have no bearing on the prosecution of Plaintiff's case. In recognition of this, Timothy Chandler appropriately deducted time spent communicating with the media from his declaration for fees. (*See* Doc. # 32). The Court should do the same with regard to Mr. Langdon's declaration.

| Date | Time | Work Performed |
|---|---|---|
| 6-Mar | .30 | Online training for ECF filing of complaint |

| Date | Time | Work Performed |
|---|---|---|
| 6-Mar | 1.2 | Finalize complaint and prepare same for overnight filing |

| Date | Time | Work Performed |
|---|---|---|
| 9-May | .10 | Review ECF entry re Notice of Pretrial conference |

| Date | Time | Work Performed |
|---|---|---|
| 25-Aug | .10 | Forward Angel's email to clients |

| Date | Time | Work Performed |
|---|---|---|
| 2-Sept | .20 | Research attorney fee issues (reasonableness of rates – evidentiary or legal issue?) |

These entries reveal that Plaintiff seeks to be compensated at $285.00 per hour for Mr. Langdon's performance of paralegal and/or secretarial tasks, which is improper. Ohio district courts have found that "clerical or secretarial tasks ought not to be billed at lawyers' rates even if a lawyer performs them." Genesis Dreamplex, *supra*, 2006 WL 2404140 at *7 (citing Cleveland Area Bd. of Realtors v. City of Euclid, 965 F.Supp. 1017, 1022 (N.D. Ohio 1997) ("attention to file and setting up litigation files . . . fax[ing]" are considered secretarial tasks and cannot be
{H1339715.1}                                    15

billed at attorney rates). Accordingly, Defendant respectfully requests that the Court exclude these entries, which reflect tasks more properly performed by a paralegal, from any fee award or, at minimum, only compensate them at the rate of $75 per hour—the fee Defendant has agreed is reasonable for paralegal work. (*See* Doc. #31). *See also* Cedar Fair, *supra*, 2008 WL 408695 at *4 (reducing lawyer's time entries where tasks performed were easy and required, at most, skill level of a paralegal); Access 4 All, Inc. v. Hi 57 Hotel, No. 04Civ.6620(GBD)(FM), 2006 WL 196969 at *3 (S.D.N.Y. Jan. 26, 2006) (Ex. 11) ("[C]ertain tasks performed by attorneys at the Fuller firm could more appropriately have been performed by a paralegal.").

| Date | Time | Work Performed |
|---|---|---|
| 25-Aug | .40 | Correspond with WMT regarding serving as expert witness |

| Date | Time | Work Performed |
|---|---|---|
| 2-Sept | .10 | Correspond with WMT re status of fee motion/expert testimony, schedule |

| Date | Time | Work Performed |
|---|---|---|
| 2-Sept | .10 | Review correspondence from WMT re same |

| Date | Time | Work Performed |
|---|---|---|
| 4-Sept | .10 | Correspond with WMT re expert testimony |

| Date | Time | Work Performed |
|---|---|---|
| 12-Sept | .20 | Correspond with Tim re Library's fee offer, rates, expert etc. |

| Date | Time | Work Performed |
|---|---|---|
| 12-Sept | .20 | Telephone conference re expert affidavit |

| Date | Time | Work Performed |
|---|---|---|
| 19-Sept | .10 | Correspond with WMT re expert declaration in support of motion for fees |

Plaintiff's time entries do not fully identify "WMT" or explain his area of expertise. However, Plaintiff was not required to retain an expert witness given that Defendant agreed to stipulate to the reasonableness of the hourly rates charged by Plaintiff's legal team. (*See* Doc. #31). Plaintiff's counsel first asked Defendant's counsel whether Defendant would stipulate to

the reasonableness of their rates on August 29, 2008. (Newcomb Afd. ¶7). However, Plaintiff's counsel did not actually disclose to Defendant's counsel the rates it sought to recover until September 19, 2008, after which time Defendant's counsel promptly advised Plaintiff's counsel that Defendant would stipulate to their reasonableness. (Id.). Had Plaintiff's counsel been timelier in providing this information to Defendant's counsel, there would have been no need for Plaintiff to consult with an expert witness. Accordingly, Defendant respectfully requests that these time entries be excluded from any fee award to Plaintiff. *See* Cedar Fair, *supra*, 2008 WL 408695 at *3 (district court refused to compensate prevailing party's counsel for calls to expert witness that were not made "in conjunction with anticipated or actual litigation against" defendant).

| Date | Time | Work Performed |
|---|---|---|
| 5-Sept | .10 | Review correspondence from Angel re settlement |

| Date | Time | Work Performed |
|---|---|---|
| 5-Sept | .10 | Draft correspondence to Tim re same [settlement] |

| Date | Time | Work Performed |
|---|---|---|
| 5-Sept | .10 | Draft correspondence to WMT re same |

| Date | Time | Work Performed |
|---|---|---|
| 16-Sept | .10 | Review settlement proposal letter from opposing counsel |

| Date | Time | Work Performed |
|---|---|---|
| 18-Sept | .10 | Correspond with Tim re fees (response to settlement offer, potential stipulation re rates) |

After the Court issued its decision granting Plaintiff's Motion for Preliminary Injunction on August 14, 2008, the parties engaged in minimal settlement discussions to resolve the attorneys' fees and costs issue. (Newcomb Afd. ¶8). However, these settlement negotiations were unsuccessful. (Id.). In Imwalle, *supra*, 515 F.3d 531, the district court excluded 28.8 hours of time spent in unsuccessful settlement negotiations from the attorneys fees and costs awarded

to the prevailing party. Id. at 551. Here, the Court should do the same by excluding these entries from any fee award to Plaintiff as well as .50 hours devoted to settlement discussions that appear on Timothy Chandler's declaration, reducing his total compensable time from 113.30 hours to 112.8 hours.[10]

## III. CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion for Attorney's Fees and Non-Taxable Expenses in its entirety because special circumstances render an award of such costs and fees unjust. Alternatively, Defendant respectfully requests that the Court exercise its discretion to make an across-the-board reduction of Plaintiff's request for attorneys' fees by up to 80 percent because Plaintiff succeeded on only one of its five claims for relief, or to make whatever reductions the Court deems necessary to exclude the duplicative, excessive and improper billing by Plaintiff's legal team as detailed herein.

Respectfully submitted,
SCHOTTENSTEIN, ZOX & DUNN

/s/ Susan Porter
Susan Porter, Esq. (0036867)
250 West Street
Columbus, Ohio 43215
(614) 462-2314 (telephone)
(614) 462-5135 (facsimile)
E-mail: SPorter@szd.com
*Trial Attorney for Defendant*

---

[10] These entries are dated 9/11/08, 9/12/08, 9/16/08, and 9/18/08. (*See* Doc. #32). If the Court were to exclude all of these time entries, Mr. Langdon's total compensable time would be reduced from 40.9 hours to 34.7 hours.

OF COUNSEL:
Angelique Paul Newcomb, Esq. (0068094)
SCHOTTENSTEIN, ZOX & DUNN
250 West Street
Columbus, Ohio 43215
(614) 462-2257 (telephone)
(614) 462-5135 (facsimile)
E-mail: ANewcomb@szd.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October 2008, a copy of the foregoing Defendant's Memorandum in Opposition to Plaintiff's Memorandum in Support of its Motion for Attorneys' Fees and Non-Taxable Expenses was filed electronically and served upon the following individuals via the Court's electronic notification system:

>Timothy D. Chandler, Esq.
>ALLIANCE DEFENSE FUND
>101 Parkshore Drive, Suite 100
>Folsom, California 95630
>tchandler@telladf.org
>*Attorney for Plaintiff*

>and

>David R. Langdon, Esq.
>LANGDON & HARTMAN LLC
>11175 Reading Road, Suite 104
>Cincinnati, Ohio 45241
>dlangon@langdonlaw.com
>*Attorney for Plaintiff*

/s/ Angelique Paul Newcomb
Angelique Paul Newcomb