**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CITIZENS FOR COMMUNITY VALUES, INC., :<br>　:<br>　　Plaintiff,　:<br>　:<br>vs.　:<br>　:<br>　:<br>UPPER ARLINGTON PUBLIC LIBRARY　:<br>BOARD OF TRUSTEES,　:<br>　:<br>　　Defendant.　: | Case No. 2:08-cv-00223-GCS-NMK<br><br>Judge George C. Smith<br>Magistrate Judge Norah McCann King |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEYS FEES AND NON-TAXABLE EXPENSES**

**INTRODUCTION**

The Library in its Memorandum concedes that Plaintiff is the prevailing party in this litigation. Nonetheless, the Library asks this Court to deny altogether, or at least severely limit, the attorney fees to which Plaintiff is entitled as a result of its status as the prevailing party. Indeed, the Library recklessly accuses Plaintiff of orchestrating this case in bad faith, but offers no evidence to support its accusation. Then, using an argument that courts have repeatedly rejected, the Library claims that Plaintiff was only 20 percent successful in this case, and its fees should be reduced accordingly. Finally, the Library distorts Plaintiff's counsels' time records in an attempt to paint them as excessive and duplicative.

As shown below, each of these arguments fails. Thus, Plaintiff respectfully requests this Court grant its fees and costs in litigating this matter.

**I.      No special circumstances exist that would justify denying Plaintiff's award of attorney fees.**

"In the absence of special circumstances a district court not merely 'may' but *must* award fees to the prevailing plaintiff" under 42 U.S.C. § 1988. *Morscott, Inc. v. City of Cleveland*, 936 F.2d 271, 272 (6th Cir. 1991) (quotation marks and citations omitted; emphasis in original). Special circumstances arise only in rare cases, and "the burden is on the non-prevailing party to make a strong showing that 'special circumstances warrant a denial of fees.'" *Déjà Vu of Nashville, Inc. v. Metro Gov't. of Nashville & Davidson County*, 421 F.3d 417, 420 (6th Cir. 2005) (citation omitted).

The Library has failed to make the requisite "strong showing" here. Rather, based on one entry in Mr. Langdon's timesheet describing a five-minute meeting with a representative of Plaintiff, the Library engages in wild speculation that Plaintiff "orchestrated" the lawsuit to recover fees "to advance its counsel's political agenda." Defendant's Memorandum in Opposition to Plaintiff's Memorandum in Support of its Motion for Attorneys' Fees and Non-Taxable Expenses ("Opp."), pp. 3-4. But the Library does not even pretend that it has any actual *evidence* to prove its accusations of unethical conduct by Plaintiff's counsel. Instead, the Library merely "posits" its "belief" that its accusations are true. Opp., pp. 4-5.

Given the Library's failure to satisfy its burden to make a strong showing, no further explanation is necessary. But, in the interest of defending counsels' reputation before this Court, a brief explanation is offered. From the time entry it is reasonable to conclude that Plaintiff had a short discussion with its general counsel advising him of the status of its application. At the time, Plaintiff had several similar applications pending, as it desired to conduct its "Politics and the Pulpit" events in several locations throughout Southwest Ohio, including Columbus. Because the event violated the Library's policy on its face, Plaintiff wisely consulted its attorney in preparing

the application and, further, in planning its strategy if the application were denied.[1] Two of the four venues to which Plaintiff applied approved Plaintiff's event, and two denied. So Plaintiff conducted two events (in West Chester and Miamisburg) and filed two lawsuits (against Upper Arlington and Union Township).[2]

Unremarkably, at the time of the meeting, Plaintiff and its General Counsel had already discussed the possibility of filing a lawsuit against the Library if it denied Plaintiff's application. Indeed, based on its policy and public statements made by Library Board members, Plaintiff expected that the Library would deny its request to use a meeting room for its event. As such, it was entirely appropriate for counsel to characterize the five-minute discussion with Plaintiff's representative as concerning a "potential case" against the Library. Accordingly, the Court should reject the Library's unfounded accusations of unethical conduct by Plaintiff's counsel, and rebuke the Library's counsel for making such false accusations without any evidence to back them up.

---

[1] The Library dedicates almost a full page of its brief arguing that Plaintiff should not be compensated for this conversation (which lasted for 0.1 hours) because it occurred before the Library actually denied Plaintiff's application. Opp., p. 13. But, because this conversation related to counsel's knowledge of the policy, it is clearly related to the litigation, and is appropriately included in Plaintiff's fee motion.

[2] The Library suggests that Plaintiff knew that it would not be subject to the policy's restrictions because it did not consider its event to be a "religious service." Opp., p. 4. But it was not until after this lawsuit was filed that the Library revealed that it does not actually enforce the policy's ban on "religious meetings." *See* Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, p. 17 n.5. And, as the Library concedes, its ban on "religious meetings" is "inherently inconsistent" with the rest of its policy. *Id.* at p. 40 n.13. Under these circumstances, Plaintiff understandably did not know how the Library would apply its policy.

## II. Plaintiff's fee award should not be mechanically reduced simply because this Court did not reach all of Plaintiff's constitutional claims.

In addition to its request for a complete denial of fees based on its unsupported accusations of unethical conduct by Plaintiff's counsel, the Library asks the court to reduce Plaintiff's fees by 80% because, it claims, Plaintiff succeeded "on only one of its five causes of action." Opp., p. 6. Yet the Supreme Court decision the Library relies on to make this argument—*Hensley v. Eckerhart*—flatly rejected this very argument: "We agree with the District Court's rejection of a mathematical approach comparing the total number of issues in the case with those actually prevailed on." 461 U.S. 424, 435 n.11 (1983) (quotation marks and citation omitted).

Rather, the Court explained, such reductions are only appropriate in cases where a plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories," and the plaintiff is only successful on some of those claims. *Id.* at 434. In a case where the plaintiff's claims "involve a common core of facts or [are] based on related legal theories," the case "cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.*; see also *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 555 (6th Cir. 2008) (because of the "common facts" and "significant overlap in the legal theories underlying [plaintiff's] claims," the district court did not abuse its discretion by refusing to reduce a fee award based on plaintiff's failure to succeed on every claim).

In *Granzeier v. Middleton*, 173 F.3d 568 (6th Cir. 1999), a case cited by the Library, the plaintiffs claimed that the government violated the Establishment Clause by closing various courts and offices on Good Friday, and by posting a sign on a courthouse door (announcing this closing) that included a picture of a crucifix. *Id.* at 571. Upon receiving the suit, the defendants immediately removed the signs and admitted that they violated the Establishment Clause. *Id.* Litigation continued over the Good Friday closings, and the court ultimately held that they were constitutional. *Id.*

The plaintiffs were only awarded fees for the time their attorneys spent working on the challenge to the crucifix on the sign. This reduction was appropriate because they "achieved very limited success." They "prevailed on only one of two distinct issues," which was "concluded early in the litigation before much of the work was done" and was "ancillary to the key issue for which plaintiffs sought redress." *Id.* at 577-78 (quotation marks omitted).

The same is not true here. This case arose from a common core of facts—the Library's refusal to allow Plaintiff's event in one of its meeting rooms—that supported several related constitutional challenges. This Court ruled in Plaintiff's favor on its free speech claim, and thus did not need to reach Plaintiff's other claims because the requested relief was the same for all of them. Thus, Plaintiff is entitled to compensation for "all hours reasonably expended on the litigation." *Id.*

**III.   The Library has largely failed to show that Plaintiff's requested time is duplicative or excessive.**

The Library does not dispute the reasonableness of time expended on this case by Kevin Theriot or Michele Schmidt. But it raises a few objections to the time expended by Timothy Chandler and David Langdon, arguing that some of their time is duplicative or excessive. As shown below, however, almost all of these objections are unfounded.

5

### A. Counsel spent a reasonable amount of time preparing the Complaint, Motion for Preliminary Injunction, and the supporting memorandum.

The Library asks for a 30 percent reduction on the hours spent by Messrs. Chandler and Langdon working on the Verified Complaint and Motion for Preliminary Injunction because they "borrowed substantially" from similar documents filed in *Faith Center Church Evangelistic Ministries v. Glover*, No. 3:04-cv-03111-JSW (N.D. Cal. 2004). Opp., p. 10. In support of this novel theory, the Library cites one unreported case from this district, and two unreported (and related) cases from the Northern District of Ohio.

In *Stahl v. Taft*, this Court rejected the argument that hours spent by plaintiff's counsel are *per se* unreasonable where counsel has worked on similar cases in the past. 2006 WL 314496 at *3 (S.D. Ohio 2006).[3] The Court offered several good reasons for this, and also noted that there was no support in case law for the defendants' theory. Several months after *Stahl* was decided, Judge Watson reached a contrary conclusion in *Estep v. Blackwell*, despite the absence of any case law supporting his decision. Likewise, the two unreported decisions in the *Disabled Veterans* cases cited by the Library do not rely on any cases for support. Accordingly, based on this Court's decision in *Stahl*, none of the unreported cases cited by the Library merit the Court's consideration.

Even if they do merit consideration, the cases are easily distinguishable. Indeed, in each case the courts reduced the attorney fee awards because the pleadings were essentially identical to work performed by plaintiffs' counsel in other cases. *See, e.g., Estep v. Blackwell*, 2006 WL 3469569 at *3 (S.D. Ohio 2006) (reducing time spent preparing documents "which to a great

---

[3] A copy of this opinion is attached as Exhibit 2 to the Memorandum in Support of Plaintiff's Motion for Attorneys Fees and Non-Taxable Expenses.

percentage [were] duplicative" of pleadings filed by counsel in another case),[4] *Disabled Patriots of America v. Cedar Fair*, 2008 WL 408695 at *3 (N.D. Ohio 2008) (reducing time spent preparing complaint because it had only one paragraph of unique work product, the rest was "identical to complaints in other cases"); *Disabled Patriots of America v. Genesis Dreamplex*, 2006 WL 2404140 at *4-5 (N.D. Ohio 2006) (imposing 30% reduction on motion for attorneys' fees because it "closely duplicate[d]" documents filed in similar cases, while refusing to reduce time spent on another document that had some "similarity in content," but was primarily "case specific").[5]

Here, the facts are very different. While this case and *Faith Center* unquestionably bear some similarities, even a cursory comparison of the pleadings reveals that Plaintiff's counsel did not simply copy its work from *Faith Center*. Indeed, Plaintiff urges the Court to review and compare the pleadings, rather than simply relying on the Library's false characterizations of their alleged similarity. Upon review, the Court will see that there are significant differences between the two cases to justify the time Plaintiff's counsel spent preparing the pleadings and preliminary injunction motion in this case. Most notably:

---

[4] A review of the *Estep* pleadings reveals that the complaint and motion for a temporary restraining order contained only about six pages of unique work product combined. The rest was copied essentially word-for-word from the pleadings in *Lambert*. *See* Exs. B to E of Chandler Supp. Decl. Judge Watson reduced counsel's compensable time working on these documents from 22 hours to 15 hours (approximately 32%). *Estep*, 2006 WL 3469569 at *3. Given the substantial differences between the pleadings in this case and in *Faith Center* discussed in this section, the Library's request for a similar reduction is entirely unwarranted.

[5] Copies of these opinions are attached as Exhibits 3-5 to the Defendant's Memorandum in Opposition to Plaintiff's Memorandum in Support of its Motion for Attorneys' Fees and Non-Taxable Expenses.

- The factual situations in both cases are distinct, with different plaintiffs seeking to hold different events subject to different meeting room policies. Thus, the pleadings in this case discussing these facts are entirely unique work product.[6]

- While both cases raised similar free speech and equal protection claims, this case also included a claim under the Ohio Constitution and a Fourteenth Amendment due process claim. And unlike here, the motion for preliminary injunction in *Faith Center* did not address the plaintiff's free exercise claim. Thus, the pleadings in this case addressing those causes of action are also entirely distinct from those in *Faith Center*.[7]

- As this Court noted in its Opinion and Order, the Sixth Circuit and the Ninth Circuit (where *Faith Center* is being litigated) use different public forum analyses, specifically in how they evaluate a "designated public forum" versus a "limited public forum." *See* Opinion, p. 9 n.3 [Document # 19]. Thus, Plaintiff was required to evaluate the nature of the forum here differently than in *Faith Center*.

- While the pleadings in both cases rely on some of the same authorities, those in this case also rely on Sixth Circuit case law that was not cited in *Faith Center*.[8]

- Mr. Langdon (who is not involved in *Faith Center*) has considerable experience litigating public forum cases in the Sixth Circuit, and that experience and expertise accounted for much of his contribution to the Complaint and PI motion.

- In this case, Plaintiff filed a five-page Motion for Preliminary Injunction under separate caption. No such document was filed in *Faith Center*. This, too, was unique work product.

The Library tries to further distort and discredit the work performed by Plaintiffs' counsel by falsely asserting that Mr. Chandler "spent approximately 42.6 hours associated with drafting" these documents, and that 11.1 of those hours were spent on Plaintiff's claim under the Ohio Constitution. Opp., pp. 9, 10. Both claims are inaccurate. Mr. Chandler spent a total of 42.6

---

[6] *See, e.g.,* Verified Complaint ("Compl."), pp. 2-7; Plaintiff's Memorandum in Support of Motion for Preliminary Injunction ("PI Memo."), pp. 4-5, 10-11.

[7] *See, e.g.,* Compl., pp. 11-12; PI Memo., pp. 13-15, 16-18.

[8] *See, e.g.,* PI Memo., p. 5 (discussing *Lister v. Defense Logistics Agency*); pp. 8-9 (discussing *Rusk v. Crestview Local Sch. Dist.*); pp. 18-19 (relying on a variety of Sixth Circuit case law).

hours on the case up until the complaint was filed. It was not all spent on drafting, and he spent less than two hours on Plaintiff's state law claim. Mr. Chandler's compensable time breaks down as follows:

- Approximately 24.7 hours preparing the initial drafts of the Verified Complaint, Motion for Preliminary Injunction, and the supporting memorandum.

- Approximately 4.1 editing these three documents.

- Approximately 10.4 hours conducting research. 5.6 hours were spent on factual research, reviewing the Library Board of Trustees meeting minutes, which contained information related to the Library's meeting room policy. The remaining 4.8 hours were spent on researching relevant Ohio state constitutional and statutory provisions (1.3), and Sixth Circuit case law on religious speech, viewpoint discrimination, and public forum doctrine (3.5).

- Approximately 3.4 hours on other tasks, such as communicating with the Plaintiff and co-counsel, reviewing civil cover sheet, *pro hac vice* application, corporate disclosure statement, etc.

Even factoring in the 19.1 hours the Library claims Mr. Langdon spent "reviewing and revising" these documents (Opp. p. 11),[9] that amounts to a total of 47.9 hours that were spent drafting, editing, and reviewing all three documents—or slightly more than an hour per page. This is a reasonable amount of time spent on substantive documents in a case that raised fundamentally important and fairly complex constitutional issues—some of which are rife with confusion. See*, e.g.,* Order at 9 n.3 (noting the confusion surrounding the public forum doctrine); *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 405 (5th Cir. 1995) (lamenting the confusion in modern Establishment Clause jurisprudence); see also *Walton v. Massanari*, 177 F. Supp. 2d

---

[9] The Library does not explain how it reached this amount. Plaintiff calculates that Mr. Langdon actually spent 15.5 hours reviewing and revising the Complaint, Motion for Preliminary Injunction, and the supporting memorandum. *See* Ex. A to Langdon Supp. Decl. (time entries dated Feb. 26 (0.8), Feb. 27 (2.4), Feb. 28 (4.1), Mar. 3 (1.5), Mar. 4 (2.9), Mar. 5 (3.3), and Mar. 6 (0.5)).

359, 365 (E.D. Penn. 2001) (holding that it was reasonable for counsel to spend two hours per page on a brief, and noting that the Third Circuit had found that spending three hours per page on a brief which consisted of "one uncomplicated issue" was reasonable).

The hours reported by Plaintiff's counsel are actual hours of work reasonably spent on this case. These hours would have been significantly more if counsel did not have experience litigating similar cases.

> **B.     The billed conference time among counsel was not unreasonable.**

The Library next objects to "approximately 20.5 hours in fees for conferences [Mr. Langdon] had with other members of Plaintiff's legal team," claiming that this amount is excessive. Opp., p. 12. Not only does the Library fail to explain how it calculated this amount, it also fails to explain *why* this amount is excessive.[10] The only case it cites to support its argument on this point is *Lee v. Javitch, Block & Rathbone*, 568 F. Supp. 2d 870 (S.D. Ohio 2008). But this case actually undermines the Library's argument. In *Lee*, the plaintiff's counsel billed 70.4 hours for conferences among its co-counsel. 568 F. Supp. 2d at 878. While noting that, as a (quite obvious) *general proposition of law*, it is possible for counsel to engage in excessive conferences, the court held that the 70.4 hours was not "unnecessarily duplicative." *Id.* This amounted to approximately 16% of the total amount of time for which counsel sought compensation.[11] Here, even accepting the Library's inaccurate tally of 20.5 hours for Mr. Langdon, and adding to it the 9.5 hours that Mr. Chandler spent corresponding with co-counsel, the time spent by Plaintiff's counsel corresponding with each other amounts to only 14.7% of the

---

[10] Plaintiff calculates the total to be approximately 17 hours.

[11] The attorneys in *Lee* sought compensation for a total of 441.2 hours. *Id.*

10

total number of hours for which Plaintiff's counsel is seeking compensation. So, compared to *Lee*, Plaintiff is actually seeking *less* compensation for time spent corresponding in relation to the total amount of work performed.[12]

### C. Reasonable time spent on unsuccessful settlement negotiations is compensable.

The Library also objects to 1.0 hours (0.5 hours of time for both Mr. Langdon and Mr. Chandler) spent by Plaintiff's counsel on settlement discussions. Opp., pp. 17-18. Relying on *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531 (6th Cir. 2008), the Library contends that this time is not compensable because the settlement negotiations were not successful. But in *Imwalle*, the Sixth Circuit merely noted that the district court had excluded 28.8 hours spent in unsuccessful settlement negotiations. That exclusion was not appealed, and the Sixth Circuit did not actually address whether such time is compensable. *Id.* at 551. Other courts that have actually addressed this issue have awarded fees for reasonable time spent on unsuccessful settlement negotiations. *See, e.g., Couch v. Continental Casualty Co.*, 2008 WL 131198 at *5 (E.D. Ky. 2008) (awarding attorney fees incurred as a result of reasonable settlement efforts because "settlement discussions are an ordinary part of the litigation process") (Ex. 1); *Miller v. Holzmann*, 2008 WL 3319032 at *19 (D.D.C. 2008) ("substantial authority supports relator's claim to compensation for his attorneys' pursuit of settlement, whatever the ultimate outcome") (listing cases) (Ex. 2).

---

[12] It is also worth noting that neither Mr. Theriot, Ms. Schmidt, nor any other attorney or paralegal who has assisted on this case, is seeking compensation for time spent corresponding with Plaintiff's counsel on this case. Plaintiff has intentionally eliminated this time to ensure that its fee motion avoid excessive or duplicative time.

These holdings conform to "the general public policy that courts should encourage settlement whenever possible, for to deny civil rights attorneys from recovering fees expended during settlement efforts would create an unnecessary disincentive to settlement." *Sugarman v. Village of Chester*, 213 F. Supp. 2d 304, 312 (S.D.N.Y. 2002) (awarding fees under 42 U.S.C. § 1988 for time spent on unsuccessful settlement efforts). Thus, this time is compensable.

### D. The bulk of the Library's remaining objections should be rejected.

The Library objects to several other specific entries in Mr. Langdon's time statement, most of which should be rejected.[13] For example, the Library objects to a February 28 entry that it claims is vague. Opp., p. 14. But Mr. Langdon clarified this entry in his supplemental declaration, showing that this time is appropriately included in Plaintiff's fee motion. *See Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (declining to reduce attorney fee award for vague time entries that were clarified in reply brief).

The Library also lists several entries it believes are more appropriately billed at a paralegal rate ($75.00 per hour). Opp., p. 14. Plaintiff does not dispute that the entries dated March 6 may be billed at this reduced rate.[14] But it disagrees that Mr. Langdon's time spent reviewing an order from this Court (May 9 entry), communicating with his client (August 25

---

[13] Plaintiff does not object to the Library's suggested 0.1 hour reduction for Mr. Langdon's time discussing another lawsuit with co-counsel. Opp., p. 14. Nor does it object to a reduction in his award for time spent corresponding with the media about this case. Opp., pp. 14-15. It is worth noting, however, that the Library objected to two of Mr. Langdon's time entries (Mar. 10 and Mar. 25) related to media correspondence that he did not actually request compensation for. *Id.* The requested reductions for Mr. Langdon's March 3 and August 14 time entries (totally 0.5 hours) are now reflected in Mr. Langdon's updated itemized time statement. *See* Ex. A to Langdon Supp. Decl.

[14] These entries total 1.5 hours. Mr. Langdon's updated itemized time statement reduced them to total 0.3 hours. *See* Ex. A to Langdon Supp. Decl.

entry) and conducting legal research (September 2 entry) should be billed at a reduced rate. These activities fall squarely within the scope of a lawyer's typical duties in litigating a case to completion. *See, e.g., Lee*, 568 F. Supp. 2d at 877 ("there is no requirement that a lawyer must employ a paralegal to do research"). And notably, the Library does not object to any other similar entries in the timesheets submitted by Plaintiff's counsel.

Finally, the Library objects to Mr. Langdon's 1.2 hours spent in consultation with an expert witness regarding Plaintiff's fee motion. Of course, it is common for courts to rely on expert testimony in determining a reasonable hourly rate when calculating an attorney fee award. *See, e.g., Disabled Patriots of America v. Genesis Dreamplex, LLC*, 2006 WL 2404140 at *3 ("Proof of prevailing market rates may be demonstrated in a number of ways, including: (1) affidavits of other attorneys or experts; . . . ."); *Ousley v. Gen. Motors Ret. Program for Salaried Employees*, 496 F.Supp.2d 845, 850 (S.D. Ohio 2006) ("Expert testimony or an affidavit is required to establish a reasonable hourly rate"). As such, it was reasonable for Plaintiff to anticipate needing such an expert. The Library complains that Plaintiff's counsel took too long in providing it information regarding Plaintiff's hourly rates, to which the parties ultimately stipulated. Opp., p. 17. This complaint is unjustified, however, because Plaintiff's counsel initiated the proposed stipulation for the sole purpose of saving the Library from paying the expert fees and costs that Plaintiff would have been forced to incur had the parties not stipulated to the reasonableness of counsels' hourly rates. It was not unreasonable for Plaintiff's counsel to engage an expert (William M. Todd of Benesch Friedlander in Columbus) and communicate with him about the case and the status of the proposed stipulation. As such, this time is fully compensable.

**IV.     Plaintiff's time spent preparing this reply memorandum is compensable.**

The Library does not dispute that counsel's reasonable time spent preparing documentation in connection with Plaintiff's motion for attorneys' fees and costs is compensable. *See Weisenberger v. Huecker*, 593 F.2d 49, 54 (6th Cir. 1979). Included with this memorandum are declarations from Mr. Chandler and Mr. Langdon that include itemized statements detailing their time spent on preparing this memorandum. As with their other itemized statements, counsel took specific measures to avoid over-billing, including keeping time in tenth-hour increments and reducing or zeroing out any time entries that are duplicative, unnecessary, or otherwise unreasonable. And, although Mr. Theriot reviewed the memorandum and Ms. Schmidt helped prepare the documents for filing, Plaintiff is not seeking any additional compensation for their time. Given these measures, the amount of additional compensable time requested is reasonable.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for attorneys fees in the amount of $51,410.50.[15] This amount reflects the reductions discussed in this memorandum, plus the additional time spent preparing this memorandum. Additionally, Plaintiff respectfully requests that the Court grant its motion for non-taxable expenses, which the Library has not objected to.

---

[15] $28,020.00 for Mr. Chandler, $17,755.50 for Mr. Langdon, $3,750.00 for Ms. Schmidt, and $1,885.00 for Mr. Theriot.

Respectfully submitted this 12th day of November, 2008.

|  |  |
|---|---|
| Benjamin W. Bull[+]<br>AZ Bar No. 009940<br>Attorney for Plaintiff<br>ALLIANCE DEFENSE FUND<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>Telephone: (480) 444-0020<br>Email: bbull@telladf.org<br><br>Kevin H. Theriot*<br>KS Bar No. 21565<br>Attorney for Plaintiff<br>ALLIANCE DEFENSE FUND<br>15192 Rosewood<br>Leawood, Kansas 66224<br>Telephone: (913) 685-8000<br>Email: ktheriot@telladf.org | /s/ *Timothy D. Chandler*<br>Timothy D. Chandler*<br>CA Bar No. 234325<br>Attorney for Plaintiff<br>Heather Gebelin Hacker*<br>AZ Bar No. 024167, CA Bar No. 249273<br>Attorney for Plaintiff<br>ALLIANCE DEFENSE FUND<br>101 Parkshore Drive, Suite 100<br>Folsom, California 95630<br>Telephone: (916) 932-2850<br>Email: tchandler@telladf.org<br>  hghacker@telladf.org<br><br>David R. Langdon<br>OH Bar No. 0067046<br>Attorney for Plaintiff<br>LANGDON & HARTMAN LLC<br>11175 Reading Road, Ste. 104<br>Cincinnati, Ohio 45241<br>Telephone: (513) 733-1038<br>Email: dlangdon@langdonlaw.com |

*Admitted *pro hac vice*
+Of Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2008, I electronically submitted the foregoing document with the Clerk of Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Kevin Theriot**
ktheriot@telladf.org,jrennels@telladf.org

**David R Langdon**
dlangdon@langdonlaw.com

**Timothy D Chandler**
tchandler@telladf.org,mschmidt@telladf.org

**Heather Gebelin Hacker**
hghacker@telladf.org

*Counsel for Plaintiff*

**Angelique Paul Newcomb**
ANewcomb@szd.com

**Susan Porter**
sporter@szd.com

*Counsel for Defendant*

/s/ *Timothy D. Chandler*
Timothy D. Chandler
CA Bar No. 234325
ALLIANCE DEFENSE FUND
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 932-2850
Email: tchandler@telladf.org